UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO B. HEYWARD,<br><br>   Plaintiff,<br><br>   v.<br><br>HAYWARD POLICE DEPARTMENT, et al.,<br><br>   Defendants. | Case No. 15-cv-04802-JCS<br><br>**ORDER GRANTING DEFENDANTS' SUMMARY JUDGMENT MOTION**<br><br>Re: Dkt. No. 78 |

## I. INTRODUCTION

Plaintiff Marco Heyward brings this action against the City of Hayward[1] and Officers Matthew McCrae and Gabrielle Wright under 42 U.S.C. § 1983 based on events that occurred on February 24, 2015. Presently before the Court is Defendants' Motion for Summary Judgment ("Motion"). At the request of the Court, the parties filed supplemental briefs in connection with the Motion addressing Plaintiff's Fourteenth Amendment Equal Protection Claim. A hearing on the Motion was held on Friday, June 23, 2017 at 9:30 a.m. For the reasons stated below, the Motion is GRANTED.[2]

---

[1] Although Plaintiff names the "Hayward Police Department, a subdivision of the City of Hayward" as a defendant, a police department is not a proper defendant under 42 U.S.C. § 1983. *See Nichols v. Brown,* 859 F. Supp. 2d 1118, 1136 (C.D. Cal. 2012) (holding that a city police department was not a proper defendant under 42 U.S.C. § 1983 because that section provides for liability against a "person," which "includes local governmental entities . . . , but does not encompass municipal or county departments."). Defendants have construed Plaintiff's complaint as suing the City of Hayward ("the City"), *see* Notice of Motion, Docket No.78, and therefore the Court does the same.

[2] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 626(c).

## II. BACKGROUND

### A. Factual Background[3]

The incident that is the subject of this action occurred on February 24, 2015. When the incident began, Mr. Heyward and his son, M.H., were in the pool area of the 24-Hour Fitness Gym in Hayward, California. Amended Complaint at 1. Both Mr. Heyward and his son, M.H., were members of 24-Hour Fitness at the time. Nishioka Decl., Ex. 1 (Marco Heyward Dep.) at 151, 203, 210. M.H., who is 14 years old, was in the pool swimming and his father was calling out instructions to him. Amended Complaint at 2; Heyward Decl., Ex. F (M.H. Dep.) at 10-11. There is no evidence that Mr. Heyward was using any offensive language or engaging in any aggressive behavior as he coached his son and Defendants do not contend that he was.

At some point, a 24-Hour Fitness manager, Tyler Eklund, told Mr. Heyward that he was being too loud and asked him to leave. Nishioka Decl., Ex. 1 (Marco Heyward Dep.) at 150. Heyward Decl., Ex. F (M.H. Dep.) at 12. Mr. Heyward told Mr. Eklund that he and his son had a right to remain as they were members of 24-Hour Fitness and he was not breaking the law. Nishioka Decl., Ex. 1 (Marco Heyward Dep.) at 160. Mr. Eklund told Mr. Heyward that he intended to call the police. *Id.*

Approximately 10 minutes after the exchange between Mr. Eklund and Mr. Heyward occurred, Hayward Police Officers Matthew McCrae and Gabrielle Wright arrived at the 24-Hour Fitness and approached Mr. Heyward in the pool area. Heyward Decl., Ex. F (M.H. Dep.) at 12. A recording from Officer McCrae's "PUMA recording device" captured the encounter. Nishioka Dec., Ex. 2 (recording). According to Officer McCrae, this recording reflects his entire interaction with Mr. Heyward and is unedited. McCrae Decl., ¶ 6. Mr. Heyward contends the recording omits the initial portion of his conversation with Officer McCrae, as he walked with the Officers along the length of the pool to the hallway, and that certain portions of the conversation were spliced out. Nishioka Decl., Ex. 1 (Marco Heyward Dep.) at 193, 214. He does not dispute, however, that the statements that can be heard in the recording, which include the statements that

---

[3] The facts stated here are those that the Court finds to be undisputed based on the evidence in the record unless otherwise stated.

were made while Mr. Heyward was placed in handcuffs and the conversation in the squad car, were actually made.

At the beginning of the recording, Mr. Heyward can be heard calling out instructions to his son, who was swimming laps. Nishioka Decl., Ex. 2. Officer McCrea greeted Mr. Heyward and asked to speak with him; he informed Mr. Heyward that 24-Hour Fitness had asked that Mr. Heyward leave the premises because of complaints that he was being too loud. *Id*. Mr. Heyward can be heard protesting that he was entitled to remain because he was a member and that he was making no more noise than others who used the pool area, pointing out as an example that music was frequently played in the pool area. *Id*. Although Mr. Heyward continued to object, it appears to be undisputed that as he engaged with the Officers about his belief that he was entitled to remain in the fitness center, he and the Officers began walking away from the pool, following Mr. Heyward's son in the direction of both the main entrance and the locker room, where M.H. had gone to change. *Id*. According to M.H., Officer McCrae had "yelled" at him to get out of the pool and so M.H. had gotten out and gone to the locker room to change. Heyward Decl., Ex. F (M.H. Dep.) at 12, 38.[4] M.H. further testified that no officers or staff accompanied him to the locker room and that he was alone there. *Id*. at 22.

As the Officers and Mr. Heyward approached the locker room, Mr. Heyward expressed concern about the safety of his son. Nishioka Decl., Ex. 2. He then turned to enter the locker room, at which point, the officers "grabbed" Mr. Heyward and placed him in handcuffs. Heyward Decl., Ex. B (Marco Heyward Dep.) at 214, 247; Heyward Decl., Ex. D (Heyward Dep.) at 213.[5]

---

[4] Neither Officer McCrae nor Officer Wright can be heard instructing M.H. to get out of the pool on the audio recording. The City did not produce an audio recording of Officer Wright's interactions with M.H. and offered a declaration by Officer Wright that she did not record any part of the incident that occurred at 24-Hour Fitness that day. *See* Wright Decl., Docket No. 84-1 ¶ 7. Although Plaintiff argued at the hearing that an exchange on Officer McCrea's recording indicates that Officer Wright *did* record the events of that day, the Court conducted an additional review of the audio recording following the hearing and did not find anything on it that supports Plaintiff's contention.

[5] At the hearing, Defendants' counsel asserted that Mr. Heyward was not placed in handcuffs until after he and the Officers were outside of the building. The only evidence he cited is the fact that Officer McCrea can be heard saying on the audio recording "now that we are outside" just before Mr. Heyward was restrained. This statement is ambiguous, however, as it could well have referred to being outside the pool area rather than outside of the building altogether. In the face of this ambiguity, the Court accepts as true Mr. Heyward's account that he was placed in handcuffs

3

Although the officers can be heard instructing Mr. Heyward as to the position of his arms while they placed him in handcuffs, and not to "tense up," it is impossible to determine from the audio whether Mr. Heyward was resisting or attempting to flee. Officers McCrae and Wright state generally in their declarations that Mr. Heyward was "uncooperative" and had to be "physically escorted out of the business," McCrae Decl., ¶ 4; Wright Decl., ¶ 4, but they do not state in their declarations that Mr. Heyward was ever physically aggressive, that he attempted to resist when the Officers placed him in handcuffs or that he appeared to be trying to flee the scene.

Although Defendants contend Mr. Heyward essentially conceded at his deposition that he was resisting, citing his testimony that a scuffle can be heard as the Officers placed him in handcuffs, *see* Motion at 2 (citing Heyward Dep. at 173-174, 216), Defendants take Mr. Heyward's testimony out of context. Mr. Heyward testified at his deposition that there were sounds of scuffling at this point in the audio because the Officers were "trying to do something to [him]" and that their intent was to "cause injury" and "put [him] down on [his] face." Nishioka Decl., Ex. 1 (Heyward Dep.) at 173-174, 215-216. As Defendants' counsel said to Mr. Heyward at his deposition as they went through the audio recording together, "you don't sound like someone who's going through a struggle right now." Nishioka Decl, Ex. 1 (Marco Heyward Dep.) at 216.

Mr. Heyward testified at his deposition that he told the officers at this time that he was a disabled veteran and that the Officers shouldn't "physically grab [him]." Nishioka Decl., Ex. 1 (Marco Heyward Dep.) at 193. Similarly, he states in his Opposition brief that when the Officers "aggressively grabbed him" and put him in handcuffs, he "informed the Officers that he was a disabled veteran who suffers multiple injuries ranging from lower back and spinal injuries to the L3 and L1 spinal discs, ankles, lower extremities: left quadriceps rupture and patella, and right quadriceps tendon and any physical aggression by the Officers would . . . exacerbate[] [his] injuries." Opposition at 2-3. No such statements can be heard on the audio recording, however,

---

when he turned to enter the locker room. The court notes that Defendants appeared to accept this version of the incident themselves in their briefs. *See* Motion at 2 (statement of facts, citing Heyward Dep. at 193).

4

even though Mr. Heyward identified the point in the recording when he was placed in handcuffs.

Mr. Heyward contends he was, in fact, complying with the Officers' orders when he started to enter the locker room, believing that it was understood that in order to leave the Fitness Center he would need to stop in the locker room to supervise his son while he changed his clothes and to retrieve his personal items. *Id*. at 216, 244. Mr. Heyward testified that there was an exit from the 24-Hour Fitness that could be accessed through the locker room and that he regularly used this exit. *Id*. at 244. He also testified that Officer McCrae had not told him "which direction he wanted [Mr. Heyward] to go." *Id*. Officer McCrae and Officer Wright both stated in their declarations that they were unaware of any exit other than the one through the main entrance. McCrae Decl. ¶ 5; Wright Decl. ¶ 5. However there is no evidence in the record that contradicts Mr. Heyward's testimony that he had not been given specific instructions about which way he should go in exiting the building. Nor can the Officers or Mr. Heyward be heard on the audio recording discussing whether Mr. Heyward would be permitted to follow his son into the locker room, though Mr. Heyward can be heard protesting *after* he was physically prevented from doing so. Nishioka Decl., Ex. 2.

It is undisputed that after Mr. Heyward was placed in handcuffs, he was walked outside and was placed in the Officers' squad car. Nishioka Decl., Ex. 2. Mr. Heyward testified at his deposition that the handcuffs were "extremely tight" and that when he was in the squad car his knees were at an "awkward angle" and that his "back was killing [him]." Heyward Decl., Ex. C (Marco Heyward Dep.) at 240. However, Mr. Heyward cannot be heard in the audio recording complaining or informing the Officers that he was in pain while he was talking to the Officers in the squad car. In support of his Opposition brief, Mr. Heyward offers evidence that he suffers from chronic knee pain, that he has had surgery on his left knee, and that he suffers from severe tendinosis and osteoarthristis, among other things. Heyward Decl., Ex. A.[6] M.H. testified that his

---

[6] Among the medical records provided by Mr. Heyward in support of his opposition brief is a letter dated May 30, 2017, ostensibly from Dr. Richard A. Karp, of the Oakland VA Outpatient Clinic. The letter carries the heading "Police Incedent [sic] 2/2017 and states that Mr. Heyward is "followed at the Oakland VA for multiple concerns including ankle and a left lower extremity injury." Heyward Decl., Ex. A (Karp Letter). It goes on to state:

father later told him that the Officers had been "a bit too rough" with him and that the next day he had seen bruises near his father's shoulder blade that appeared to be caused by a hand grabbing Mr. Heyward in a "rough manner." Heyward Decl., Ex. F (M.H. Dep.) at 35-36.

The Officers eventually released Mr. Heyward from the squad car to allow him to walk home with his son, instructing him that he should not return to the 24-Hour Fitness that day. Nishioka Decl., Ex. 2. M.H. testified that the entire encounter lasted about 20 minutes. Heyward Decl., Ex. F (M.H. Dep.) at 34; *see also* McCrae Decl. ¶ 8 (stating that the entire interaction with Mr. Heyward lasted 17 minutes and 56 seconds). No charges were filed against Mr. Heyward in connection with the incident.

Mr. Heyward testified that he suffered from emotional distress as a result of the events of February 24, 2015. Nishioka Decl., Ex. 1 (Marco Heyward Dep.) at 255. He does not offer any admissible evidence that he was physically injured as a result of the encounter. Nor is there any evidence that Mr. Heyward sought medical treatment for any injuries received in connection with

---

Mr. Heyward was subject to excessive force and false incarceration by the Hayward Police February 2015. Mr. Heyward continues to suffer from exacerbations of physical pain and disability secondary to the incident as well as post-traumatic stress disorder due to this excessive force. He continues to undergo physical and bahvioral [sic] therapy for both the physical and mental complications from this incident.

*Id*. Mr. Heyward offers no reason for failing to disclose Dr. Karp's opinion prior to the deadlines for expert and non-expert disclosure (March 10, 2017 and April 21, 2017, respectively). Therefore, the Court excludes the letter pursuant to Rule 37(c)(1). Further, even if the opinions of Dr. Karp had been timely disclosed, they would be inadmissible because they do not satisfy the requirements of Rule 701 of the Federal Rules of Evidence (governing opinion testimony of lay witnesses) or Rule 702 (governing expert testimony). Opinion testimony by a lay witness is admissible only if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The opinions offered in the letter do not describe Dr. Karp's treatment of Mr. Heyward but instead purport to be based on the writer's specialized knowledge as a doctor and therefore do not meet the requirement of Rule 701(c) of the Federal Rules of Evidence. Nor is there any indication that the opinions are based on Dr. Karp's perception as no details are offered as to when (or if) he examined or treated Plaintiff for any injuries Plaintiff allegedly received; likewise, the opinions are not helpful because they are entirely conclusory. Even if Dr. Karp might qualify as an expert under Rule 702 (a question the Court need not reach), the opinions in the letter are not admissible because that rule also requires that opinions offered by an expert must be "based on sufficient facts or data" and be "the product of reliable principles and methods." Fed. R. Evid. 702. Further, expert opinions are admissible only if "the expert has reliably applied the principles and methods to the facts of the case." *Id*. In light of the conclusory nature of the letter, these requirements have not been met. Summary judgment may be defeated only on the basis of *admissible* evidence. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

6

the incident. His wife testified that she was not aware of Mr. Heyward taking pain medication or using ice to treat any injury after the incident. Nishioka Reply Decl., Ex. 1 (Gonzales Dep.) at 16. Mr. Heyward has introduced evidence that he "continues to seek mental health services at the VA Oakland Behavioral Health Clinic daily" and that he is "actively involved in therapy (both group, individual and couple's counseling) to address PTSD symptoms (hyper vigilance, depression, bouts of anger, crying spells)." Heyward Decl., Ex. A (March 20, 2017 Letter from Cynthia Wright). It is unclear when he began that counseling or whether any of the counseling was related to the incident that is at issue in this case.

### B. Plaintiff's Claims

In his original complaint, Plaintiff asserted three causes of action against Defendants: 1) violation of 42 U.S.C. § 1985; 2) conspiracy; and 3) "intentional tort." *See* Docket No. 6 at 3. The Court dismissed these claims pursuant to 28 U.S.C. § 1915 with leave to amend. *Id*. Plaintiff filed an Amended Complaint, which the Court found "complie[d] with Title 28 USC § 1915." Docket No. 12. The Amended Complaint is the operative complaint in this action.

As Plaintiff is not an attorney, the "Causes of Action" set forth in the Amended Complaint do not provide a clear statement of Plaintiff's claims. Defendants have not filed any motions prior to the instant Motion. Nor do they address in their summary judgment motion the specific claims Plaintiff asserts in his Amended Complaint. Therefore, the Court is faced with the task of determining what claims are being asserted in this action. Construing the Amended Complaint liberally, the Court concludes that Plaintiff asserts the following claims, all under 42 U.S.C. § 1983: 1) unreasonable detention in violation of the Fourth Amendment against Officers McCrae and Wright; 3) excessive force in violation of the Fourth Amendment against Officers McCrae and Wright; 3) racial profiling in violation of the Fourteenth Amendment Equal Protection Clause against Officers McCrae and Wright; and 4) *Monell* claims against the City of Hayward based on the allegations that the Officers' violations of the Fourth and Fourteenth Amendment resulted from a policy or custom on the part of the City of Hayward of "view[ing] all individuals as 'Criminals' without probable cause, especially Blacks/African Americans when responding to a call." Amended Complaint at 6 (ECF page); *see also* Amended Complaint at 7 (attributing the conduct of the officer defendants to "lack of

7

training").[7]

## III. ANALYSIS

### A. Legal Standards

#### 1. Rule 56 of the Federal Rules of Civil Procedure

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Id.* On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

#### 2. 42 U.S.C. § 1983

Section 1983 provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (citation omitted)). Thus, analysis of a civil rights claim brought under § 1983 begins with the identification of the "specific constitutional right allegedly infringed by the challenged application of force." *Id*. at 394 (citation omitted).

---

[7] Generally, when an individual sues a local government for violation of his constitutional rights, the municipality is liable only if the individual can establish that the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation he suffered. *Nichols v. Brown,* 859 F. Supp. 2d 1118, 1136 (C.D. Cal. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978)). In order to prevail on a *Monell* claim, a plaintiff must establish that there was an underlying constitutional violation that resulted from the policy or practice that allegedly gave rise to the relevant conduct. *See Aguilera v. Baca*, 510 F.3d 1161, 1174 (9th Cir. 2007). As discussed below, the Court finds that Plaintiff has failed to demonstrate that there is any material issue of fact as to the alleged constitutional violations by the Officers that defeats summary judgment. Consequently, Plaintiff's *Monell* claim fails on summary judgment as well. The Court does not reach the question of whether Plaintiff's allegations that he was subjected to excessive force by a different Hayward police officer in a separate incident would be sufficient evidence to establish a dispute of fact as to the existence of any custom or policy under *Monell*. *See* Docket No. 89 (Plaintiff's Supplemental Brief) at ECF pages 3-4.

8

The claim is then evaluated under the constitutional standards that apply to that constitutional right. *Id*. (citing *Tennessee v. Garner*, 471 U.S. 1, 7–22 (1985)).

**B.     Fourth Amendment Claims Against Officers Wright and McCrae**

   a. Legal Standards Governing Unreasonable Detention and Excessive Force Claims

Law enforcement can stop and briefly detain a person for investigative purposes only if they have "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,'" even if they lack probable cause under the Fourth Amendment. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1868)). Reasonable suspicion is "a particularized and objective basis for suspecting the person stopped of criminal activity." *United States v. Crapser*, 472 F.3d 1141, 1147 (9th Cir. 2007) (citing *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000)).

Further, a "seizure [must] be supported by probable cause when [the] detention rises to the level of an arrest." *See Pierce v. Multnomah Cty., Or.*, 76 F.3d 1032, 1040 (9th Cir. 1996). An arrest or seizure "occurs when a law enforcement officer, through coercion, 'physical force[,] or a show of authority, in some way restricts the liberty of a person.'" *United States v. Washington*, 387 F.3d 1060, 1068 (9th Cir. 2004) (quoting *United States v. Chan-Jimenez*, 125 F.3d 1325, 1326 (9th Cir. 1997)). "Probable cause exists when, 'under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability' that a crime was committed." *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994) (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)).

"[A] detention may be unlawful under the Fourth Amendment 'either because the detention itself is [unreasonable] or because it is carried out in an unreasonable manner.'" *Meredith v. Erath*, 342 F.3d 1057, 1061–62 (9th Cir. 2003) (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir.1994)). "The scope of a detention 'must be carefully tailored to its underlying justification.'" *Ganwich v. Knapp*, 319 F.3d 1115, 1122 (9th Cir. 2003) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). It is well-established that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amendment." *Graham v.*

9

*Connor*, 490 U.S. 386, 396 (U.S. 1989) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Rather, courts ask whether the officers' actions were "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*.

"In considering an excessive force claim, [courts] balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* Determining whether the force used was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. Of these factors, the Ninth Circuit has held that the most important is "whether the suspect poses an immediate threat to the safety of the officers or others." *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994).

"[H]andcuffing substantially aggravates the intrusiveness of an otherwise routine investigatory detention." *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982). Thus, in the absence of probable cause, courts look to whether officers reasonably believed an individual was likely to flee or presented a danger to the officers or the public in determining whether the use of handcuffs was reasonable. *Id*. On the other hand, courts typically find that the initial decision to place an individual in handcuffs is reasonable if there is probable cause to believe a crime has been committed. *See, e.g., Davis v. Cty. of San Bernardino,* No. EDCV 08-1262SVWSSX, 2009 WL 3838287, at *8 (C.D. Cal. Nov. 13, 2009), aff'd, 442 F. App'x 300 (9th Cir. 2011) (finding that initial decision to place plaintiff in handcuffs did not violate Fourth Amendment based, in part, on finding that there was probable cause). Nonetheless, "abusive application of handcuffs" may violate the Fourth Amendment even if there is probable cause. *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993); *see also Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) ("overly tight handcuffing can constitute excessive force").

b. Discussion

Plaintiff's Fourth Amendment Claims encompasses two distinct theories of liability: 1) that the detention itself was unreasonable because the Officers did not have probable cause that would

10

warrant a seizure (the unlawful detention claim); and 2) that the seizure was carried out in an unreasonable manner because the officers grabbed him roughly, put him in handcuffs that were too tight, and made him sit in a painful position in their squad car (the excessive force claim).

        i. Unlawful Detention

Defendants contend their detention of Mr. Heyward was reasonable because the undisputed facts establish that the Officers had probable cause to believe Mr. Heyward was resisting arrest in violation of California Penal Code § 148 and/or that he was trespassing in violation of California Penal Code § 602(t)(1).

With respect to whether the Officers had probable cause to believe Mr. Heyward was resisting arrest, disputed facts preclude summary adjudication. California Penal Code section 148 provides that "[e]very person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment." Cal. Penal Code § 148(a)(1). It is not apparent from listening to the audio recording that Mr. Heyward was resisting arrest; although he can be heard objecting strenuously as he was being escorted out of the premises, especially when the Officers placed him in handcuffs, the audio recording does not establish that Mr. Heyward was physically resisting the Officers at any point. Nor is it clear that Mr. Heyward was acting intentionally to resist arrest or attempting to flee when he moved to enter the locker room. Moreover, there is evidence in the record – including Mr. Heyward's own testimony – that he was attempting to comply with the Officers' commands. Construing the evidence in the light most favorable to Mr. Heyward, as the Court is required to do on summary judgment, the Court finds that there are material disputes of fact on the question of whether the Officers had probable cause to believe Mr. Heyward was resisting arrest.

The question of whether the Officers had probable cause to believe that Mr. Heyward was trespassing presents a closer call. As a preliminary matter, Defendants appear to have relied on a section of the California Penal Code, section 602(t)(1), that does not apply here. That section

11

provides that a person commits misdemeanor trespass when he or she "refus[es] or fail[s] to leave the property" "upon being informed by the peace officer that he or she is acting at the request of the owner, the owner's agent, or the person in lawful possession, that the property is not open to the particular person." It goes on to provide, however, that "[t]his subdivision applies only to a person who has been convicted of a crime committed upon the particular private property." Cal. Penal Code § 602(t)(2). As there is no evidence that Mr. Heyward satisfies the requirements of section 602(t)(2), or that the Officers *believed* he met that requirement, Defendants are not entitled to summary judgment on the unlawful detention claim based on this provision.

Nonetheless, the Court finds that the Officers did have probable cause to believe that Mr. Heyward was violating subsection o of California Penal Code section 602. That section provides that a person commits a misdemeanor trespass when "[r]efusing or failing to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by (1) a peace officer at the request of the owner, the owner's agent, or the person in lawful possession, and upon being informed by the peace officer that he or she is acting at the request of the owner, the owner's agent, or the person in lawful possession, or (2) the owner, the owner's agent, or the person in lawful possession." Cal. Pen. Code § 602(o). This subsection is not limited to individuals who have been convicted of a crime committed on the private property at issue.

It is not clear that Mr. Heyward actually violated this provision and the Court does not hold as much. To establish that a misdemeanor trespass has occurred it is necessary to show not only that the individual refused to leave private property after being asked to do so by a peace officer at the owner's request; it is also necessary to demonstrate scienter. *People v. Irizarry*, 37 Cal. App. 4th 967, 975 (1995) (citing *People v. Vogel*, 46 Cal.2d 798, 801 (1956)). Scienter can be negated by a reasonable and bona fide mistake of fact. *People v. Irizarry*, 37 Cal. App. 4th 967, 975 (1995) (citing *People v. Vogel*, 46 Cal.2d 798, 801 (1956)).

This principle is illustrated in *Woods v. State*, 703 N.E.2d 1115, 1116 (Ind. Ct. App. 1998). There, Jennifer Woods was a member of Bally Total Fitness Health Club and had recently paid to renew her membership. 703 N.E. 2d at 1116. When she arrived to exercise, she was told there

12

was a problem with her membership card but was allowed to exercise while the receptionist attempted to resolve the problem. *Id*. As she left, she was told that her membership had expired and the receptionist, and then a manager, told her that they would not return her membership card. *Id*. Woods refused to leave without the card and became disruptive. *Id*. The manager then called the police, who arrested Woods for trespass because she refused to leave when asked to do so. *Id*. The trial court convicted Woods for trespass but the court of appeals overturned the conviction. The court of appeals explained that the purpose of Indiana's trespass statute was to "punish those who wilfully or without a bona fide claim of right commit acts of trespass on the land of another." *Id*. at 117. The court concluded that there was an "undisputed factual basis for Woods' belief that she had a contractual right to be on the premises" and that her "belief and bona fide claim of right defeat[ed] the mens rea requirement of the criminal trespass statute and render[ed] her conviction erroneous." *Id*. The court noted that "Woods' membership did not entitle her to make unreasonable noise and disrupt Bally's facility in demanding the return of her membership card" and therefore, "the appropriate charge would have been disorderly conduct." *Id*.

Here, construing the evidence in the light most favorable to Mr. Heyward, there is evidence from which a jury could conclude that Mr. Heyward had a reasonable and bona fide (even if mistaken) belief that he was entitled to remain in the pool area because he was a member of 24-Hour Fitness and because he believed the encouragement he was calling out to his son was no louder than music that was sometimes played in the pool area. It is a separate question, however, whether the Officer Defendants had probable cause to believe Mr. Heyward was trespassing when they placed him in handcuffs and detained him in their squad car. As noted above, probable cause exists when, "'under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability' that a crime was committed." *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994) (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)). It is undisputed that the club manager had called the police and had also informed the Officers that Mr. Heyward was no longer welcome on the premises because he was being too loud. It is also undisputed that when the Officers spoke with Mr. Heyward, Mr. Heyward did not deny that the manager had already asked him to leave and that

13

he had refused. Instead, he insisted that he was entitled to continue coaching his son (which he continued to do in the Officers' presence) at the same volume even though he had been informed that he was being too loud. While the Officers were not required to review the terms of Mr. Heyward's membership agreement or 24 Hour Fitness's rules, a reasonable person would have assumed that members are expected to heed the admonitions of club managers with respect to noise levels. Therefore, considering the totality of the circumstances, the Court finds that a reasonable person would have concluded that there was a fair probability that Mr. Heyward was trespassing. Consequently, Defendants are entitled to summary judgment in their favor on the unlawful detention claim because under the circumstances here (based on the facts that are undisputed) the Officers had probable cause to detain Mr. Heyward for trespassing.

### ii. Excessive Force

Mr. Heyward also contends the Officers used excessive force in detaining him, grabbing him roughly when they put handcuffs on him, putting the handcuffs on too tight and placing him in a painful and awkward position even though he had told them he was disabled. These allegations go to the question of whether the Officers carried out the detention in a reasonable manner.

As discussed above, under *Graham v. Connor*, courts look at a variety of factors to determine whether officers acted reasonably, the most important of which are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994). Drawing all reasonable inferences in favor of Mr. Heyward, there is evidence from which a jury might reasonably conclude that the crime at issue (trespass) was not particularly severe, that there was no immediate threat to the safety of the officers, that Mr. Heyward was not resisting arrest and that he was not attempting to flee. There is not, however, sufficient evidence to create a jury question on the question of whether Mr. Heyward was subjected to disproportionate force because there is no evidence in the record of physical injury or that the Officers ignored complaints about tight handcuffs or the awkward position in which he was placed in the squad car.

14

"The Ninth Circuit has allowed excessive force claims based on handcuffing to proceed to the jury where repeated requests to loosen the handcuffs were ignored and the plaintiff suffered some injury." *Chambers v. Steiger*, No. C14-1678-JCC-MAT, 2015 WL 9872531, at *7 (W.D. Wash. Oct. 29, 2015), report and recommendation adopted, No. C14-1678-JCC, 2016 WL 235764 (W.D. Wash. Jan. 20, 2016) (citing *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912 (9th Cir. 2001)). In *Arpin*, the Ninth Circuit affirmed the district court's entry of summary judgment in favor of the defendant on an excessive force claim where the officer "grabbed" the plaintiff's arm to place her in handcuffs when she refused to produce identification and where there was no evidence that she was injured as a result. 261 F.3d at 922. Similarly, in *Chambers* the court granted summary judgment in favor of the defendant on an excessive force claim based on alleged tight handcuffing where there was no evidence of physical injury other than the plaintiff's own claims and no evidence that the plaintiff had complained to the officer that the handcuffs were too tight. 2015 WL 9872531, at *9. In *Chambers*, the court commented that "courts have held that '[p]ainful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal. . . .'" *Id*. at *8 (citing *Rodriguez v. Farrell*, 280 F.3d 1341, 1352 (11th Cir.2002); *McDonald v. Kirkpatrick*, No. C07–396RAJ, 2008 WL 552850, at *3 (W.D. Wash. Feb. 27, 2008); *West v. Eskes*, No. C07–617RSL, 2008 WL 4283056, at *1 (W.D. Wash. Sept. 17, 2008); *James v. City of Seattle*, No. C10–1612JLR, 2011 WL 6150567, at *1 (W.D. Wash. Dec. 12, 2011)).

Here, Mr. Heyward does not contend he suffered any injury from the alleged "rough" handcuffing. Nor does he offer any evidence (or testimony) that the preexisting injuries (which relate to his back and lower extremities) were aggravated in any way, either by the manner in which he was handcuffed or the uncomfortable position in which he was placed in the back of the squad car. The only evidence that remotely suggests that Mr. Heyward was physically injured is the testimony of his son that he saw a bruise on his father's shoulder the next day. Given that Mr. Heyward himself does not claim that he suffered bruises or was injured as a result of Officer McCrae grabbing him, this evidence is not sufficient to create a disputed issue of fact. Nor does Mr. Heyward claim that he told the Officers that his back or legs hurt when he was in the squad

15

car and that his complaints were ignored. The audio recording reflects that Mr. Heyward made no such complaints.

Although Mr. Heyward argues vociferously that the audio recording was somehow tampered with and that Defendants spliced out the statements he claims he made, he offers no evidence that would support a reasonable inference of tampering. The question of whether an audio or video recording has been tampered with is a subject that requires expert testimony. *See Ciampi v. City of Palo Alto*, 790 F. Supp. 2d 1077, 1092 (N.D. Cal. 2011) ("analysis of video and audio recordings for evidence of tampering or alteration requires technical or specialized knowledge and is not a proper subject of lay opinion") (citing *United States v. Rearden*, 349 F.3d 608, 613 (9th Cir. 2003) (discussing expert testimony offered to show that images were not manipulated or altered); *Davis v. Clearlake Police Dept.*, No. C–07–03365 EDL, 2008 WL 4104344 at *10 (N.D.Cal. Sept. 3, 2008) (sustaining objection to letter offered to support argument that audio recording was altered as improper expert testimony)). In the absence of such evidence, Mr. Heyward's conclusory assertions that he made statements that are not reflected in the audio recording are not sufficient to create a disputed issue of fact.

Consequently, the Court finds that Defendants are entitled to summary judgment as to Plaintiff's excessive force claim.

### C. Fourteenth Amendment Claims Against Officers Wright and McCrae

"Racial profiling can constitute a deprivation of a citizen's right to equal protection under the law." *James v. City of Seattle*, 2011 WL 6150567 at *13 (W.D. Wash. Dec. 12, 2011); *see also Whren v. United States*, 517 U.S. 806 (1996) (holding that claims asserting selective enforcement of the law based on considerations such as race are properly brought under the Equal Protection Clause). To state a claim for racial profiling in violation of the Equal Protection Clause, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based on membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005) (citation and quotations omitted). An inference that the Fourteenth Amendment was violated may arise where there could have been no basis for the officers' conduct other than race. *Thomas v. Melendez*, No. 116CV01759LJOJLT, 2016 WL 7116720, at *3 (E.D.

16

Cal. Dec. 7, 2016).

Plaintiff contends he was treated less favorably than others who are not African-American but he has introduced no evidence from which a jury could reasonably conclude that the Officers' conduct was based on race. Further, as discussed above, the Officers had probable cause to believe that Mr. Heyward was trespassing because he had been asked to leave the premises and refused to do so. Thus, no reasonable jury could conclude that there was no basis for the Officers' conduct other than race. Defendants are entitled to summary judgment on Plaintiff's equal protection claim.[8]

## IV. CONCLUSION

For the reasons discussed above, the Court finds that Defendants are entitled to summary judgment as to all of Plaintiffs' claims. Accordingly, the Court DISMISSES this case, in its entirety, with prejudice.

**IT IS SO ORDERED.**

Dated: June 28, 2017

JOSEPH C. SPERO
Chief Magistrate Judge

---

[8] Because the Court finds that Defendants are entitled to summary judgment as to the underlying constitutional violations, it need not reach the question of whether the Officer Defendants are entitled to qualified immunity.

17